MICHAEL J. SACKSTEDER (CSB No. 191605)
msacksteder@fenwick.com
JESSICA L. BENZLER (CSB No. 306164)
jbenzler@fenwick.com
PAYAM AHMADI (CSB No. 353973)
pahmadi@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA  94111
Telephone:    415.875.2300
Facsimile:    415.281.1350

DAVID L. HAYES (CSB No. 122894)
dhayes@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Attorneys for Plaintiff EVIDIUM, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVIDIUM, INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>BMJ PUBLISHING GROUP LIMITED,<br><br>               Defendant. | Case No.: _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

**PORTIONS OF THIS COMPLAINT**

**CONDITIONALLY FILED UNDER SEAL**

COMPLAINT FOR PATENT
INFRINGEMENT

CASE NO.: _____

Plaintiff Evidium, Inc. ("Evidium") hereby files this Complaint against the BMJ Publishing Group Limited ("BMJ"), and alleges as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1. This case arose when a venerable institution in medical publishing misused its position of trust, misrepresented its intentions, and broke its promises to a California-based start-up company, stealing the company's technology to compete directly against it.

2. Plaintiff Evidium has developed innovative technology for applying artificial intelligence ("AI") to the field of medical knowledge, making such knowledge computational and enabling reliable, explainable healthcare AI. The technology has many applications across healthcare, including diagnosing patients' medical conditions, predicting the progression of those conditions, identifying treatment needs, and supporting better outcomes. Defendant BMJ purported to possess data that Evidium could employ in conjunction with Evidium's technology.

3. Under the guise of fostering a business relationship between the two companies, BMJ induced Evidium to enter into multiple agreements, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4. On information and belief, at the time this relationship began, BMJ was unaware of the details of Evidium's technology or of its vast potential to revolutionize the health care business. On information and belief, soon, however, through its access to Evidium's confidential technological and business information, BMJ recognized this potential. BMJ began to use its relationship with Evidium ███████████████████████████████████ to extract detailed confidential and trade secret information from Evidium regarding Evidium's technology and its applications in the health care business.

COMPLAINT FOR PATENT
INFRINGEMENT                                    1                    CASE NO.: _____

5.     Evidium eventually determined that ████████████ ████████ was of limited use to Evidium's technological implementations.  In mid-2023 and early 2024, the parties entered negotiations to bring their relationship to a close.

6.     Then, in or around November 2024, Evidium learned that BMJ had introduced a product offering called "Clinical Intelligence."  Clinical Intelligence copies the confidential and trade-secret innovations of Evidium's own technology that BMJ obtained by pretending to work on the business collaboration between BMJ and Evidium.  BMJ has positioned Clinical Intelligence to compete directly with Evidium's own offering in further violation of the agreements between the two companies.  BMJ's acts breach the ████████████████ provisions of the parties' agreements, constitute willful and malicious misappropriation of Evidium's trade secrets, and give rise to claims of unfair competition by BMJ.

7.     BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, also infringe Evidium's patents, including United States Patent Nos. 11,869,674 ("the '674 patent"), 12,518,882 ("the '882 patent"), and 12,518,883 ("the '883 patent").  True and correct copies of the '674, '882, and '883 patents are attached as **Exhibits A-C**.

8.     BMJ continued its unlawful acts despite repeated demands by Evidium for BMJ to cease and desist.  Evidium first informed BMJ in December 2024 that BMJ's Clinical Intelligence infringes the '674 patent and that BMJ had breached its contractual obligations and misappropriated Evidium's trade secrets.  Evidium provided a detailed summary of the evidence of BMJ's misdeeds in April 2025.  In April 2026, after Evidium's repeated attempts to convince BMJ to stop its unlawful course of conduct were unsuccessful, Evidium provided notice that BMJ's Clinical Intelligence also infringes the '882 and '883 patents.  Nevertheless, BMJ has continued to compete unlawfully against Evidium in the United States using Evidium's own technology.

9.     Evidium thus files this lawsuit to protect and defend its innovations and recover damages and obtain other remedies for the harm it has suffered from BMJ's unlawful activity.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                            2                                      CASE NO.: _____

**THE PARTIES**

10.    Plaintiff Evidium is a corporation organized under the laws of Delaware, having a principal place of business at 650 California Street, San Francisco, California 94108.  Evidium was formerly known as Recovery Exploration Technologies Inc. ("RecoverX").

11.    RecoverX Limited was a private limited company incorporated and registered in the United Kingdom.

12.    On information and belief, Defendant BMJ is a company organized under the laws of the United Kingdom, with a principal place of business at BMA House, Tavistock Square, London, WC1H 9JR, United Kingdom.

**JURISDICTION AND VENUE**

13.    This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over the patent claims pursuant to 28 U.S.C. § 1338(a).

14.    This Court has subject matter jurisdiction over the federal trade secret misappropriation claims pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, 28 U.S.C. § 2201, and 28 U.S.C. § 1331.

15.    This Court has supplemental jurisdiction over the other claims pled herein pursuant to 28 U.S.C. § 1367.

16.    Additionally, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, as Evidium and BMJ are respectively citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000.

17.    This Court has personal jurisdiction over BMJ because BMJ has engaged in business activities in and directed activities to the United States as a whole, including California and this judicial district.  On information and belief, BMJ has, directly or through agents and/or intermediaries, committed and/or contributed to the commission of the acts complained of herein in this judicial district; has engaged in business activities in and directed to this judicial district; has used, imported, offered for sale, sold, and/or advertised the infringing Clinical Intelligence platform in this judicial district; and has otherwise purposely availed itself of the privileges and

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT INFRINGEMENT

3

CASE NO.: _____

benefits of the laws of the State of California.  These actions sufficiently give rise to this action and/or have established minimum contacts with California and this judicial district such that the exercise of jurisdiction would not offend traditional notions of fair play and justice.

18.    Moreover, pursuant to ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████ A true and correct copy of the Technology Agreement is attached hereto as **Exhibit D**.

19.    This Court also has personal jurisdiction over BMJ pursuant to Federal Rule of Civil Procedure 4(k)(2).

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018) because BMJ is an alien defendant, and because this Court has personal jurisdiction over BMJ for the acts complained of herein.  Additionally, as explained above, ████████████████████████████████████ ████████████████████████.

21.    **Divisional Assignment**. Pursuant to Civil L.R. 3-2(c) and General Order No. 44(D)(3), this case is subject to district-wide assignment as it concerns intellectual property rights.

**FACTUAL BACKGROUND**

**Evidium's Innovative "Computational Medical Intelligence" AI Platform**

22.    Evidium is a healthcare AI and computational evidence start-up company originally founded in the United States in January 2020 as RecoverX by founder and CEO Carl Bate.  Evidium's mission is to make medical knowledge computational to support better clinical decision making, research, and care delivery.  To achieve this, Evidium developed a neuro-symbolic AI platform known as "Computational Medical Intelligence," which combines computable knowledge graphs, symbolic AI, machine learning, and generative AI to transform unstructured medical knowledge and real-world clinical data into computable, explainable, and

FENWICK & WEST LLP
ATTORNEYS AT LAW

actionable clinical intelligence. Evidium's platform enables evidence, patient trajectories, and interventions to be modeled in computational form, supporting transparent reasoning, next-best-action guidance, and advanced healthcare AI applications, including for health systems, insurers and research.

23.    A key invention underlying the Evidium AI Platform is the translation of medical evidence into computational elements that can then be used for multiple applications, including computerized suggestions for aiding patient diagnosis and treatment.  Among other technologies, the Evidium AI Platform utilizes computational evidence in the form of graphs that depend upon a database of elemental diagnostic factors ("XDFs") and elemental investigations linked to medical conditions.  These XDFs and investigations establish a medical ontology that may take the form of a computable or computation-ready knowledge graph.  A patient state can be determined by extracting known diagnostic factors and investigation results from the patient chart.  These known factors and results are matched to the graph database and a ranking of likely conditions are output.

24.    Recognizing Evidium's cutting-edge technology and potential, an array of healthcare AI investors have provided backing for the company.  These include Health2047, founded by the American Medical Association in 2016 to build and back early stage health-care companies, as well as multiple other specialist health technology and deep technology funds and individuals.

25.    Evidium has devoted extensive time, money, and other resources to the research, design, development, and enhancement of its Computational Medical Intelligence platform that utilizes a proprietary architecture and software.  Evidium is the owner of trade secrets relating to these technologies, developed at significant expense and over many years.  Evidium's trade secrets derive independent economic value from being not generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

26.    Evidium has taken reasonable steps to ensure the confidentiality of its trade secrets.  These efforts include requiring employees to sign confidentiality agreements in

COMPLAINT FOR PATENT
INFRINGEMENT                            5                            CASE NO.: _____

FENWICK & WEST LLP
ATTORNEYS AT LAW

connection with their employment, using passwords to protect access to confidential and proprietary information on company computers, and limiting access to Evidium's trade secrets on a need-to-know basis. Evidium further uses physical protections to safeguard its facilities. In addition, Evidium requires companies with which it does business to agree to maintain confidentiality with respect to the trade secrets that Evidium may share with them to conduct Evidium's business.

## Evidium's Patents

27.     Evidium has also protected certain aspects of its AI technology by obtaining patents from the United States Patent and Trademark Office. Evidium has also applied for patent protection in other countries.

28.     Evidium owns all rights, title, and interest in several United States patents, including the '674, '882, and '883 patents (collectively, the "Asserted Patents").

29.     The United States Patent and Trademark Office issued the '674 patent on January 9, 2024. The '674 patent covers methods for translating medical evidence into computational elements. The named inventors of the '674 patent are Carl Bate Tulley, Wian Stipp, Thomas Unger, David A. Epstein, Matthew McSorley, Fady Nakhla, David Robinson, Jennifer May Lee, and Arthur Böök. The '674 patent claims priority to provisional application No. 63/331,526, filed on April 15, 2022.

30.     Evidium is the owner of all rights, title, and interest in and to the '674 patent, with the full and exclusive right to file suit and enforce the '674 patent, including the right to recover damages for past infringement.

31.     The '674 patent is valid and enforceable under U.S. patent laws.

32.     The United States Patent and Trademark Office issued the '882 patent on January 6, 2026. The patent covers systems for translating medical evidence into computational elements. The named inventors of the '882 patent are Carl Bate, Wian Stipp, Thomas Unger, David A. Epstein, Matthew McSorley, Fady Nakhla, David Robinson, Jennifer May Lee, and Arthur Böök. The '882 patent is a continuation of application No.18/446,954, filed on Aug. 9, 2023, which is a

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

continuation of the '674 patent that claims priority to provisional application No. 63/331,526, filed on April 15, 2022.

33.    Evidium is the owner of all rights, title, and interest in and to the '882 patent, with the full and exclusive right to file suit and enforce the '882 patent, including the right to recover damages for past infringement.

34.    The '882 patent is valid and enforceable under U.S. patent laws.

35.    The United States Patent and Trademark Office issued the '883 patent on January 6, 2026.  The patent covers methods and systems for translating medical evidence into computational elements.  The named inventors of the '883 patent are Carl Bate, Wian Stipp, Thomas Unger, David A. Epstein, Matthew McSorley, Fady Nakhla, David Robinson, Jennifer May Lee, and Arthur Böök.  The '883 patent is a continuation of application No. 18/446,954, filed on Aug. 9, 2023, which is a continuation of the '674 patent that claims priority to provisional application No. 63/331,526, filed on April 15, 2022.

36.    Evidium is the owner of all rights, title, and interest in and to the '883 patent, with the full and exclusive right to file suit and enforce the '883 patent, including the right to recover damages for past infringement.

37.    The '883 patent is valid and enforceable under U.S. patent laws.

38.    The asserted patents share a common specification.  They disclose and claim inventions for automating access to medical evidence, including a computational evidence platform allowing any application to query and use the medical evidence.  **Exhibit A**, '674 patent, 1:17-21.

39.    The asserted patents explain that around the time of the invention date, U.S. healthcare waste was estimated at $1.5 trillion for numerous reasons.  *Id.*, 1:25-26.  For instance, bias and misdiagnosis were omnipresent and disproportionately impacted groups, with each person likely to be misdiagnosed at some point in their lifetime. *Id.*, 1:26-29.  The timeframe for new research to be put into practice for the public benefit was lagging between 5-17 years.  *Id.*, 1:29-30.  Moreover, the burden to increase efficiency rested on the clinicians, who at the time had reached around a 50% burnout rate.  *Id.*, 1:34-35.

COMPLAINT FOR PATENT
INFRINGEMENT                                7                         CASE NO.: _____

40. Medical evidence is the fundamental knowledge unit of diagnosis and treatment, but guidelines, treatment, payer economics, research, regulation, current scientific practice, and operational medical knowledge have historically been represented primarily as documents in guidelines. *Id.*, 1:36-40. Only approximately 20% of clinical guidelines are backed by current, high-quality evidence. *Id.*, 1:32-33. These problems severely limit diffusion, feedback, and scalability. *Id.*, 1:40-41. The asserted patents further highlight that artificial intelligence ("AI") architectures based on text alone are not sufficient to represent, process, or reason controllably or reliably. *Id.*, 1:41-47. Solving this major problem is critical to improved health outcomes and sustainable healthcare. *Id.*, 1:50-51.

41. Leading up to this invention, the Asserted Patents indicate that the then best practice took what were essentially narrative paper documents, even if in digital form originally, and boiled them down to other paper documents, again in narrative form, that required human beings to interpret their contents. *Id.*, 1:59-63. This process was slow, inefficient, generalized, and lacked sufficient feedback, but was unfortunately the best available before the technology described in the asserted patents and Evidium's contributions. *Id.*, 1:63-65. At around the time of the invention, current referential evidence could not support individualized assessments and context, providing insight only at a population level. *Id.*, 2:1-3. The asserted patents explain that, if existing products remain unchanged, their utility to key customers would decline for several reasons. *Id.*, 2:3-5. For example, future decisions would involve more and more factors including, but not limited to, the type of coverage, co-morbidities, individual laboratory values and trends, and others. *Id.*, 2:5-7. Then-existing technologies were not able to scale within the world of precision medicine. *Id.*, 2:7-9. For instance, one of the major challenges was the limited post-clinical trial evidence based on the real-world complexity of patient clinical context and response, which perpetuated generalized guidelines or guidelines that may be harmful. *Id.*, 2:9-13.

42. The asserted patents disclose a new platform and new techniques to address these and other problems. *Id.*, 2:26-27. They recite particular methods and apparatuses for making medical evidence computational and usable in a way that can be referenced by any application.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                    8                        CASE NO.: _____

*Id.*, 2:36-38. For example, the asserted patents cover the translation of medical evidence into computational evidence using XDFs and the use of such computational evidence in a graph database.

43. The disclosure of the asserted patents describes, but is not limited to, (1) representing clinical concepts as elemental factors and investigations that are computation useful (e.g., can be shared across conditions) and linking them in a database; (2) determination of the patient's clinical stage using these elemental factors and investigations; and (3) determination of the next-best action to recommend for a particular patient based upon his or her state using these elemental factors and investigations. *Id.*, 2:56-63.

44. The asserted patent claims are directed to patent-eligible, non-abstract subject matter. The asserted patent claims address, among other things, a specific improvement to the extraction of medical evidence or related clinical guidelines from any source that places it into a structured, computational representation system, making the medical evidence useful by any application to query the evidence and to map it to external data inputs such as a patient chart. *Id.*, 2:38-44. In addition, the asserted patents describe and claim a novel database that includes medical evidence in the form of computation elements used by any application to the science and practice of medicine, including but not limited to clinical decision support, diagnosis, administrative processes, and research purposes. *Id.*, 2:45-50. At the time of the invention, prior art techniques placed medical evidence into separate silos, which could not be used for reasoning for any medical application. *Id.*, 2:53-55. Moreover, AI applications generally were separated from the systems in which they were used in the course of real-time diagnosis by a clinician, which could lead to, among other consequences, delay of authorizations for testing due to the lack of prerequisite information. *Id.*, 4:1-5. The inventors of the asserted patents resolved these problems, as well as many other issues, by converting medical evidence into computation elements that are application (e.g., AI) ready, computational, diffusible, and deployable at unprecedented scale. *Id.*, 4:31-36. The asserted patents thus present a technological solution and improvement to a technology-based problem using techniques and technology that were not well-understood, routine, or conventional at the time.

FENWICK & WEST LLP
ATTORNEYS AT LAW

45.     The asserted claims of the '882 patent were allowed after amendment following a rejection of the originally filed claims 1-30 under 35 U.S.C. §§ 101 and 102. *See* **Exhibit E**. Specifically, the examiner agreed with applicant's argument that addition of the limitation "establish one or more application programming interfaces (APIs) for said graph database, said one or more APIs allowing an application to integrate with said graph database to access said separate entries that are linked in said graph database in order to generate a healthcare determination" overcame the section 101 rejection. *Id.* As the applicant argued and the examiner noted in allowing the claims, "[N]ot only is an API a software construct that a human cannot practically perform in his or her mind, but also [] the API allows the software application to integrate with the graph database to access the entries. Practically speaking, a human cannot implement a software application in his or her mind in order to integrate it with a graph database via an API." *Id.* Thus, the asserted claims of the '882 patent were allowed over the prior art of record and following consideration of Section 101 issues.

46.     The asserted claims of the '883 patent were also allowed after amendment following a rejection of the originally filed claims 1-30 under 35 U.S.C. §§ 101 and 102. *See* **Exhibit F**. Specifically, the examiner agreed with applicant's argument that addition of the limitation "outputting, responsive to said medical query, an output to said software application, wherein said output includes data related to one or more of said medical condition nodes, said finding nodes, or said investigation nodes that are relevant to said medical query in order for said software application to generate a medical determination" overcomes the section 101 rejection. *Id.* The applicant argued and the examiner noted in allowing the claims that "not only is the API (through which the software application outputs its medical determination) a software construct that a human cannot practically perform in his or her mind, but also [] the API allows the software application to access the knowledge graph to perform the query. . . [A] human cannot implement a software application in his or her mind in order to access a knowledge graph via an API." *Id.* Thus, the asserted claims of the '883 patent were allowed over the prior art of record and following consideration of Section 101 issues.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                              10                              CASE NO.: _____

**The Parties' Mutual Business Relationship**

47.    Beginning in April 2020, Evidium and BMJ engaged in numerous discussions related to a potential ongoing mutual business relationship.  Under the guise of establishing a mutually beneficial business collaboration, BMJ induced Evidium (formerly RecoverX) and its United Kingdom counterpart, RecoverX Limited, to enter into four agreements:

- ████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████

- ████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████ ██████████

- ████████████████████████████████████████████████ ████████████████████████████ BMJ and RecoverX executed an "Agreement for the Licensing of BMJ Best Practice" dated June 1, 2021 ("Best Practice Agreement"), ████████████████████████████████



- Under the "Technology Licence Agreement" dated October 1, 2021 between BMJ and RecoverX ("Technology Agreement," **Exhibit D**),

Collectively, the ███████████, ████████, Best Practice Agreement, and Technology Agreement are referred to herein as the "Agreements."

48.    Following the execution of these Agreements, the parties had a series of discussions in which Evidium disclosed extensive details about the technical design, development, and implementation of Evidium's Computational Medical Intelligence platform, including its XDF and graph database technology and its methods for creating and utilizing computational evidence.  BMJ also induced Evidium to disclose details of its technology for a next-best-action system comprising computational evidence, model training, and real-time

COMPLAINT FOR PATENT
INFRINGEMENT                    12              CASE No.: _____

operations ("Next-Best-Action Technology"). BMJ also gained extensive knowledge of Evidium's confidential detailed business plans and strategies.

49. For example, in September and October of 2020, Evidium shared its initial core design frameworks, including XDFs, and ideas concerning its proprietary graph with BMJ's Chief Technology Officer, Ian Mulvany, and its Head of Health Informatics, Chris Wroe. ███

███████████████████████████████████████

███████████████████████████████████████

████████████████████

50. As part of the parties' arrangement ████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████

51.   ████████████████████████████████

███████████████████████████████████████

████████████████████████████

**BMJ Lacked Comparable Technology Before the Arrangement with Evidium**

52. On information and belief, when Evidium and BMJ began confidential business and technical communications, BMJ had no notion of developing its own clinical intelligence solution employing a knowledge graph based on computable evidence—*i.e.*, content that is machine readable and processable for any use case in any context—such as that employed by Evidium.

COMPLAINT FOR PATENT INFRINGEMENT

13

CASE NO.: _____

53.    On information and belief, BMJ's products and prototypes at that time, including its Action Sets product derived from Best Practice content, did not utilize computable data.  For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ BMJ thus lacked computable capability before Evidium's involvement.

54.    On September 11, 2021, Evidium provided—at BMJ's request and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—a proposal to help make BMJ's Action Sets computable ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This proposal included detail on Evidium's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shortly after Evidium shared this proposal, containing details of Evidium's computable evidence technology in response to BMJ's request to help make its Action Sets computable, Mr. Mulvany proposed that the BMJ and Evidium teams get together to share architecture plans and learn more about how BMJ could make use of Evidium's computable evidence technology.  In response, a two-day "Tech and Product Deep Dive" was held on December 9-10, 2021.  Attendees for the deep dive included Ms. Crowe, Mr. Mulvany, and Mr.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Wroe from BMJ.

55.    On January 19 and 25, 2022, further deep-dive meetings were held between Evidium and BMJ on                    and Evidium's proprietary technology.  The purpose of these deep dives was to further explore collaboration opportunities for BMJ to use Evidium technology as part of a partnership between the companies.  In connection with the first session, Evidium shared with Mr. Mulvany and the BMJ team a document

Through confidential communications with

FENWICK & WEST LLP
ATTORNEYS AT LAW

Evidium, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ BMJ first learned of the technical and commercial desirability of such an approach.

56.     During both of the January 2022 deep dive sessions, Evidium shared multiple details about its approach to computable evidence with BMJ, as recorded by notes taken by Mr. Wroe from the sessions and circulated to the parties afterward.  Those notes show that details of Evidium's technology disclosed to BMJ included at least the following ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

57.     Following these sessions, BMJ requested and Evidium provided further details and access to its proprietary technology.  Specifically, on March 9, 2022, BMJ emailed Evidium asking about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Evidium provided these materials ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

58.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                     16                          CASE NO.: _____



59.

60.    On information and belief, before its technical discussions with Evidium, ███ ███████████████████████████████████████████████████████ It learned how to do so through extensive exposure to the details of Evidium's confidential, trade secret technology.

**BMJ Misappropriates Evidium's Intellectual Property**

**to Develop a Competing Product**

61.    Although  the parties continued to discuss the potential for an ongoing business relationship based on the Agreements, Evidium ultimately determined that the data BMJ provided under the Agreements was of limited use to Evidium's technological implementations.

COMPLAINT FOR PATENT
INFRINGEMENT                                    17                        CASE NO.: _____

FENWICK & WEST LLP
ATTORNEYS AT LAW

Recognizing that there was no benefit to having the relationship go forward, in late 2023 and during the first half of 2024, the parties negotiated a mechanism to wind down the relationship.

62.    An improbably short time after ███████████████████████████ ███████████████████████████████████████████████, BMJ announced and began marketing "BMJ Clinical Intelligence," which purported to employ the "BMJ knowledge graph" to "deliver[] computable evidence at scale."  This announcement in 2024 effectively mimicked not only Evidium's product offering but also the language Evidium uses to market its own offering.  The announcement included ███████████████████████████ ██—two individuals who received Evidium's confidential, trade secret information during the deep-dive sessions between Evidium and BMJ. ██████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████

63.    The "BMJ Clinical Intelligence" platform is described at https://clinicalintelligence.bmj.com/ and was publicly demonstrated at the HIMSS 2025 Global Conference in Las Vegas, Nevada in March 2025.  *See* **Exhibit G**.  BMJ has stated in a public presentation about BMJ Clinical Intelligence that the product is "[u]sed by BMJ for our own products and our customers."  *See* **Exhibit H**.  The BMJ website describes that platform as "computable evidence at scale" that "provides healthcare providers, payors, and healthcare platform providers with high-quality computable guideline recommendations across the whole patient and population health journey," and gives "trusted recommendations" that are "coded and converted into computable form in a knowledge graph."  *See* **Exhibit I** (https://clinicalintelligence.bmj.com/ (last visited April 16, 2026)).  This platform and its underlying database derived from BMJ's Best Practice data converted into computable form via natural language processing is referred to collectively as "BMJ Clinical Intelligence."

64.    On information and belief, BMJ Clinical Intelligence and other AI product offerings that rely on or relate to the BMJ knowledge graph are built using Evidium's trade secrets, confidential information, and patented technology.  Such products also compete directly

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                        18                          CASE No.: _____

with Evidium's platform utilizing detailed trade secrets and patented technology derived from these extensive technical and business discussions between Evidium and BMJ.

65.    BMJ has since publicly described a broader enterprise strategy—beyond merely Clinical Intelligence—of transforming BMJ Group's clinical content into "computable evidence" delivered through a "dynamic knowledge graph" architecture supporting APIs, workflow integrations, and large language model ("LLM") systems across BMJ Group offerings.  BMJ publicly states that it is "embedding 200 years of evidence directly into clinical workflows" and describes its knowledge graph as "relationship-based" rather than rules-based, positioning the architecture as foundational infrastructure for AI-enabled clinical reasoning systems.  Separately, BMJ has stated in its own Clinical Intelligence materials that this graph-based architecture is "used by BMJ for our own products and our customers."

66.    █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

67.    Evidium discovered BMJ's violations of the parties' Agreements and improper use of Evidium's intellectual property in or around November 2024, when Evidium learned that BMJ had introduced its Clinical Intelligence product and began to look into its design, capabilities in converting medical information into computable form, and the structure of the knowledge graph on which was based.

68.    On December 12 and 22, 2024, counsel for Evidium sent letters to BMJ and its counsel detailing BMJ's breaches of the parties' Agreements, theft of Evidium's intellectual property, and notifying BMJ of BMJ's infringement of the '674 patent.  The letters demanded that

COMPLAINT FOR PATENT INFRINGEMENT                    19                    CASE NO.: _____

BMJ immediately cease all activities on its own behalf or on behalf of its customers to use, sell, offer for sale, market, promote, or distribute BMJ Clinical Intelligence or any other infringing technology in the United States. BMJ refused to stop its illegal activities.

69. On April 8, 2025, in response to BMJ's denial of infringement, counsel for Evidium sent a letter to BMJ and its counsel providing further evidence of BMJ's breaches of the parties' Agreements, misappropriation of Evidium's trade secrets, and infringement of the '674 patent.

70. On April 8, 2026, counsel for Evidium sent a letter to BMJ and its counsel notifying BMJ of BMJ's infringement of the '882 and '883 patents. The letter demanded that BMJ immediately cease all infringing activities. It also reiterated Evidium's previous demands for BMJ to cease its unlawful use of Evidium's confidential, trade secret, and patent-protected information and technology to make commercial inroads in the United States market in competition with Evidium. On information and belief, BMJ has made no attempt to comply with Evidium's demand.

71. By using, selling, or offering for sale products and services that rely on or relate to the BMJ knowledge graph, including BMJ Clinical Intelligence, in the United States, and by inducing others to use such products and services, BMJ has and continues to willfully and maliciously misappropriate Evidium's trade secrets and has and continues to willfully infringe Evidium's patents. BMJ has also breached its confidentiality and non-compete obligations in the Agreements with Evidium, and is engaging in unfair competition at least under the laws of the state of California.

**FIRST CAUSE OF ACTION**

**(Infringement of United States Patent No. 11,869,674)**

72. Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

73. On January 9, 2024, the '674 patent, entitled "Translation of Medical Evidence Into Computational Evidence and Applications Thereof," was duly and legally issued to Recovery Exploration Technologies Inc. Evidium is the lawful owner by assignment of all right, title, and

FENWICK & WEST LLP
ATTORNEYS AT LAW

interest in the '674 patent, including the rights to exclude others and to sue and recover damages for infringement.

74.    BMJ has infringed and continues to infringe at least claims 1 and 12 of the '674 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '674 patent.

75.    BMJ's products and services that rely on or relate to the BMJ knowledge graph, including BMJ's Clinical Intelligence, meet each and every limitation of at least claims 1 and 12 of the '674 patent, either literally or under the doctrine of equivalents, and therefore infringe those claims. A claim chart explaining and providing evidence of this infringement, based on BMJ's published detailed descriptions of the BMJ Clinical Intelligence product, is attached as **Exhibit K**.

76.    Any use of BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, in the United States constitutes direct infringement of the '674 patent under 35 U.S.C. § 1271(a). In addition, because BMJ is aware of the '674 patent, understands that Evidium contends that BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, infringe that patent, and encourages or enables its customers to use such products and services in the United States, BMJ has acted with specific intent to cause infringement by others, rendering BMJ liable for inducement of infringement of the '674 patent under 35 U.S.C. § 1271(b).

77.    BMJ's acts of infringement of the '674 patent were and are undertaken without authority, permission, or license from Evidium. BMJ's infringing activities therefore violate 35 U.S.C. § 271.

78.    As a direct and proximate consequence of BMJ's infringement of the '674 patent, Evidium has suffered monetary damages and irreparable harm, and Evidium will continue to suffer irreparable harm in the future unless BMJ is enjoined from further acts of infringement and inducement of infringement of the '674 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

79.    BMJ has been aware of its infringement of the '674 patent at least as of December 22, 2024 when it received actual notice from Evidium.  On information and belief, BMJ knew of Evidium's patented system and the '674 patent when it issued, including by analyzing Evidium's system and technology and monitoring Evidium's patent portfolio. Despite that knowledge, BMJ has done nothing to stop its blatant use and pirating of the invention claimed in the '674 patent. Accordingly, BMJ's infringement of the '674 patent is and continues to be willful.

80.    Evidium is entitled to enhanced damages due to BMJ's willful infringement. *See* 35 U.S.C. § 284.

81.    BMJ's willful infringement, together with other unlawful acts, renders this case "exceptional" under 35 U.S.C. § 285, justifying an award of Evidium's reasonable attorney fees.

## SECOND CAUSE OF ACTION
### (Infringement of United States Patent No. 12,518,882)

82.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

83.    On January 6, 2026, the '882 patent, entitled "Translation of Medical Evidence Into Computational Evidence and Applications Thereof," was duly and legally issued to Evidium, Inc.  Evidium is the lawful owner by assignment of all right, title, and interest in the '882 patent, including the rights to exclude others and to sue and recover damages for infringement.

84.    BMJ has infringed and continues to infringe at least claim 1 of the '882 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '882 patent.

85.    BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, meet each and every limitation of at least claim 1 of the '882 patent, either literally or under the doctrine of equivalents, and therefore infringe those claims.  A claim chart explaining and providing evidence of this infringement, based on BMJ's published detailed descriptions of the BMJ Clinical Intelligence product, is attached as **Exhibit L**.

COMPLAINT FOR PATENT
INFRINGEMENT                                    22                        CASE NO.: _____

FENWICK & WEST LLP
ATTORNEYS AT LAW

86. Any use of BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, in the United States constitutes direct infringement of the '882 patent under 35 U.S.C. § 1271(a). In addition, because BMJ is aware of the '882 patent, understands that Evidium contends that BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, infringe that patent, and encourages or enables its customers to use such products and services in the United States, BMJ has acted with specific intent to cause infringement by others, rendering BMJ liable for inducement of infringement of the '882 patent under 35 U.S.C. § 1271(b).

87. BMJ contributes to the infringement of one or more claims of the '882 patent under 35 U.S.C. §271(c) by offering to sell, selling, or importing into the United States a component of the patented system that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '882 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

88. BMJ's acts of infringement of the '882 patent were and are undertaken without authority, permission, or license from Evidium. BMJ's infringing activities therefore violate 35 U.S.C. § 271.

89. As a direct and proximate consequence of BMJ's infringement of the '882 patent, Evidium has suffered monetary damages and irreparable harm, and Evidium will continue to suffer irreparable harm in the future unless BMJ is enjoined from further acts of infringement and inducement of infringement of the '882 patent.

90. BMJ has been aware of its infringement of the '882 patent at least as of April 8, 2026 when it received actual notice from Evidium. On information and belief, BMJ knew of Evidium's patented system and the '882 patent when it issued, including by analyzing Evidium's system and technology and monitoring Evidium's patent portfolio. Despite that knowledge, BMJ has done nothing to stop its blatant use and pirating of the invention claimed in the '882 patent. Accordingly, BMJ's infringement of the '882 patent is and continues to be willful.

91. Evidium is entitled to enhanced damages due to BMJ's willful infringement. *See* 35 U.S.C. § 284.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                    23                    CASE NO.: _____

92.    BMJ's willful infringement, together with other unlawful acts, renders this case "exceptional" under 35 U.S.C. § 285, justifying an award of Evidium's reasonable attorney fees.

### THIRD CAUSE OF ACTION

### (Infringement of United States Patent No. 12,518,883)

93.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

94.    On January 6, 2026, the '883 patent, entitled "Translation of Medical Evidence Into Computational Evidence and Applications Thereof," was duly and legally issued to Evidium, Inc.  Evidium is the lawful owner by assignment of all right, title, and interest in the '883 patent, including the rights to exclude others and to sue and recover damages for infringement.

95.    BMJ has infringed and continues to infringe at least claim 23 of the '883 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '883 patent.

96.    BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, meet each and every limitation of at least claim 23 of the '883 patent, either literally or under the doctrine of equivalents, and therefore infringe those claims.  A claim chart explaining and providing evidence of this infringement, based on BMJ's published detailed descriptions of the BMJ Clinical Intelligence product, is attached as **Exhibit M**.

97.    Any use of BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, in the United States constitutes direct infringement of the '883 patent under 35 U.S.C. § 1271(a).  In addition, because BMJ is aware of the '883 patent, understands that Evidium contends that BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence infringes that patent, and encourages or enables its customers to use such products in the United States, BMJ has acted with specific intent to cause infringement by others, rendering BMJ liable for inducement of infringement of the '883 patent under 35 U.S.C. § 1271(b).

FENWICK & WEST LLP
ATTORNEYS AT LAW

98.     BMJ contributes to the infringement of one or more claims of the '883 patent under 35 U.S.C. § 271(c) by offering to sell, selling, or importing into the United States a component of the patented system that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '883 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

99.     BMJ's acts of infringement of the '883 patent were and are undertaken without authority, permission, or license from Evidium.  BMJ's infringing activities therefore violate 35 U.S.C. § 271.

100.    As a direct and proximate consequence of BMJ's infringement of the '883 patent, Evidium has suffered monetary damages and irreparable harm, and Evidium will continue to suffer irreparable harm in the future unless BMJ is enjoined from further acts of infringement and inducement of infringement of the '883 patent.

101.    BMJ has been aware of its infringement of the '883 patent at least as of April 8, 2026 when it received actual notice from Evidium.  On information and belief, BMJ knew of Evidium's patented system and the '883 patent when it issued, including by analyzing Evidium's system and technology and monitoring Evidium's patent portfolio.  Despite that knowledge, BMJ has done nothing to stop its blatant use and pirating of the invention claimed in the '883 patent. Accordingly, BMJ's infringement of the '883 patent is and continues to be willful.

102.    Evidium is entitled to enhanced damages due to BMJ's willful infringement. *See* 35 U.S.C. § 284.

103.    BMJ's willful infringement, together with other unlawful acts, renders this case "exceptional" under 35 U.S.C. § 285, justifying an award of Evidium's reasonable attorney fees.

### FOURTH CAUSE OF ACTION

**(Trade Secret Misappropriation Under 18 U.S.C. §§ 1836, 1839(5)(B))**

104.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

105.    Evidium owns and possesses certain confidential and proprietary information properly defined as a "trade secret" pursuant to 18 U.S.C. § 1839(3).  Specifically, as described

COMPLAINT FOR PATENT
INFRINGEMENT                                    25                          CASE NO.: _____

above, Evidium is the owner of trade secrets, which include technical information, compilations, formulas, designs, methods, techniques, processes, procedures, programs, and code related to the creation and operation of Evidium's AI platform described in the paragraphs above. On information and belief, Evidium also owns certain trade secrets related to the technology in BMJ's products and services that rely on or relate to the BMJ knowledge graph, including its Clinical Intelligence system.

106. Evidium's trade secrets are necessary for the usage of AI technology in both Evidium's and BMJ's businesses across the United States. As such, the trade secrets at issue implicate interstate commerce.

107. Evidium licenses its AI technology to others under terms of strict confidentiality. Accordingly, Evidium's trade secrets derive independent economic value from being not generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

108. Evidium has made reasonable efforts under the circumstances to preserve the confidentiality of its trade secrets through the measures set forth above.

109. As described above, BMJ had access to and has obtained possession of certain of Evidium's trade secrets strictly in connection with the parties' Agreements. BMJ's valid usage of such trade secrets was limited to the uses and purposes outlined in the Agreements.

110. At all relevant times, BMJ knew or had reason to know that its knowledge of Evidium's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or to limit the use of the trade secrets. Specifically, at the time BMJ began using Evidium's confidential, trade secret technical and business information, multiple confidentiality provisions of the Agreements provided BMJ with more than ample notice that the information was protected against use to create competing products or services.

111. For example, the parties' Technology Agreement ████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

112.    As discussed above, on information and belief, the same individuals who received Evidium's confidential information were deeply involved in developing BMJ's competing solution. ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████    In light of those individual's access to Evidium's confidential information, BMJ should at least have employed a "clean room" procedure to screen those individuals from development of BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence.  Yet, the opposite happened. Under those circumstances, BMJ's improbably rapid development and release of a solution strikingly similar to Evidium's points to an inescapable conclusion: BMJ improperly used Evidium's own trade secrets to compete against Evidium.

113.    While certain of the confidential information that Evidium disclosed to BMJ has now been included in Evidium's published patents and patent applications, that information was kept secret before publication, and on information and belief, BMJ used it without Evidium's knowledge or consent during that time window to gain a head start developing its competing solution.  In addition, the confidential information that BMJ misappropriated included confidential and protected information not included in any Evidium patent application.

114.    BMJ does not have a license to use Evidium's trade secrets and proprietary information beyond the scope of the Agreements.  BMJ's use of Evidium's AI technology in developing its own competing solution constitutes misappropriation of Evidium's trade secrets.

115.    Evidium discovered BMJ's misappropriation in or around November 2024, when it first learned that BMJ had introduced its Clinical Intelligence product offering that purported to employ the "BMJ knowledge graph" to "deliver[] computable evidence at scale"—bearing a striking resemblance to Evidium's own product offering and marketing and revealing that BMJ misappropriated Evidium's trade secrets.  On information and belief, BMJ publicly launched its Clinical Intelligence product offering in or around March 2024.  Thus, Evidium, through the exercise of reasonable diligence, could not have discovered BMJ's misappropriation earlier than March 2024.  This is because BMJ's Clinical Intelligence was not publicly available and Evidium

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                27                          CASE NO.: _____

could not otherwise obtain a copy to inspect, BMJ actively concealed from Evidium its development of Clinical Intelligence, and, ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████     *See* **Exhibit J.**

116.    On information and belief, if BMJ is not enjoined, it will continue to use, disclose, or otherwise misappropriate Evidium's trade secrets for its own benefit and to Evidium's detriment.

117.    BMJ's actual misappropriation of Evidium's trade secrets has caused and threatens to cause substantial injury to Evidium, including, but not limited to actual damages, lost profits, reputational harm, and the diminution of the value of Evidium's trade secrets.  BMJ has been and continues to be unjustly enriched by its misappropriation of Evidium's trade secrets.

118.    Evidium therefore seeks injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) to protect the secrecy of its trade secret documents and information and to remedy injury to Evidium's business interests and reputation.  Evidium will suffer irreparable harm absent the requested injunctive relief.

119.    Evidium also seeks an award for the relief afforded under 18 U.S.C. § 1836(b)(3)(B), including an award of actual damages and/or unjust enrichment damages in an amount to be proven at trial.

120.    Further, as BMJ has threatened to misappropriate or has actually misappropriated Evidium's trade secrets for an improper purpose and in a willful and malicious manner, Evidium seeks exemplary damages for the maximum amount allowed under 18 U.S.C. § 1836(b)(3)(C) and attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

**FIFTH CAUSE OF ACTION**

**(Trade Secret Misappropriation Under Cal. Civ. Code § 3426 *et seq.*)**

121.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                    28                    CASE NO.: _____

122.    For the same reasons set forth above in relation to the Fourth Cause of Action, Paragraphs 104 through 120, Evidium's trade secrets are protectable under California state law pursuant to Cal. Civ. Code § 3426.1(d), and BMJ has misappropriated trade secrets.

123.    BMJ's actual misappropriation of Evidium's trade secrets has directly and proximately caused damage to Evidium including, but not limited to actual damages, lost profits, reputational harm, and the diminution of the value of Evidium's trade secrets.  BMJ has been and continues to be unjustly enriched by its misappropriation of Evidium's trade secrets.

124.    BMJ's misappropriation of Evidium's trade secrets has been conducted in a willful and malicious manner.

125.    Evidium has no adequate remedy at law, and BMJ's actions will continue to cause Evidium irreparable injury unless enjoined. Evidium is accordingly entitled to injunctive relief against BMJ to prevent further damage and harm to Evidium.  Cal. Civ. Code § 3426.2.  Evidium is also entitled to damages, including exemplary damages, recovery for unjust enrichment, and attorneys' fees, in amounts to be proven at trial for BMJ's willful and malicious misappropriation. *See id.* at §§ 3426.3, 3426.4.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)

126.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

127.    Evidium (formerly RecoverX) and BMJ are parties to the Technology Agreement.

128.    Evidium substantially performed all its obligations under the Technology Agreement during the term of that agreement.

129.

CASE NO.: _____

FENWICK & WEST LLP
ATTORNEYS AT LAW

███████████████████████████████████

███████████████████████████████████

████████████████████████████████

███████████████████████████████████

████████████

130.    BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, compete directly with Evidium's product offerings. By developing such products and services, including Clinical Intelligence, using Evidium's confidential information, and by continuing to offer for sale, sell, and make such products and services available to users in competition with Evidium, BMJ has breached and continues to breach the Technology Agreement.  Specifically, on information and belief, BMJ has incorporated RecoverX IP in its Clinical Intelligence system that competes with Evidium's Computational Medical Intelligence platform.  BMJ is, thus, materially breaching the Technology Agreement by continuing to use Evidium's technology without a license and by competing with Evidium.

131.    BMJ's breach of the Technology Agreement has harmed Evidium, as BMJ is not compensating Evidium for its use of Evidium's Technology and intellectual property.  Evidium has further been immeasurably and irreparably harmed by its loss of market share control and industry reputational loss through BMJ's unfairly competing product offering.  Because there is no adequate remedy at law to compensate Evidium for the harm BMJ's breach has caused, Evidium is entitled to a decree of specific performance or an injunction to prevent BMJ from using Evidium's technology to compete with Evidium in violation of the Technology Agreement.

132.    BMJ has also profited from and been unjustly enriched by its unauthorized use of Evidium's Technology; any compensation BMJ received relating to Evidium's Technology should be disgorged and returned to Evidium.

133.    Evidium has also been damaged by BMJ's breaches of contract in an amount to be determined at trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

COMPLAINT FOR PATENT
INFRINGEMENT                                     30                    CASE NO.: _____

## SEVENTH CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

134.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

135.    In every contract or agreement, including the Technology Agreement, there is an implied promise of good faith and fair dealing, which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.  That covenant obligated BMJ to perform the terms and conditions of the Technology Agreement fairly and in good faith, and to refrain from doing any act that would deprive Evidium of the benefits of the contract.

136.    On information and belief, BMJ breached the contract by breaching its duty of good faith and fair dealing by using Evidium's confidential information, intellectual property, and Technology, to design and develop BMJ's products and services that rely on or relate to the BMJ knowledge graph, including Clinical Intelligence, as described above.

137.    Evidium was harmed as a result of this breach, as described above.

138.    Due to BJM's breach of the implied covenant of good faith and fair dealing, Evidium has suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (Unfair Competition)

139.    Evidium incorporates herein by reference its allegations contained in the preceding paragraphs.

140.    BMJ's conduct alleged herein, including, but not limited to, its misappropriation of Evidium's trade secrets, infringement of Evidium's patents, and misrepresentations as to the purpose of entering into and then breach of the parties' Agreements, constitutes unfair, unlawful, deceptive, and/or fraudulent business acts and practices under Cal. Bus. & Prof. Code § 17200, because such acts, as alleged above, are forbidden by numerous state and federal laws and are unscrupulous, unfair, and injurious to Evidium.

FENWICK & WEST LLP
ATTORNEYS AT LAW

141.    As a proximate result of BMJ's conduct, Evidium has suffered and will continue to suffer actual damages, and BMJ will be unjustly enriched, in an amount to be determined at trial.

142.    Evidium is entitled to restitution and disgorgement of any profits BMJ has received from its violations of unfair competition law.

143.    Remedies at law are not adequate to fully compensate Evidium for the irreparable injuries that Evidium has suffered as a direct and proximate result of BMJ's unfair competition. Accordingly, Evidium is entitled to injunctive relief restraining BMJ from engaging in any further such unfair competition.

## DEMAND FOR JURY TRIAL

144.    Evidium hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Evidium prays for the following relief against Defendant:

A.    A judgment that BMJ's acts and use of Evidium's intellectual property constitute infringement of each of Evidium's '674, '882, and '883 patents;

B.    A judgment that BMJ's infringement of Evidium's '674, '882, and/or '883 patents was willful;

C.    A judgment that BMJ's acts and use of Evidium's intellectual property constitutes misappropriation of Evidium's trade secrets;

D.    A judgment that BMJ's misappropriation of Evidium's trade secrets was willful and malicious;

E.    A judgment that BMJ's acts and use of Evidium's intellectual property breached the Technology Agreement;

F.    A judgment that BMJ's acts and use of Evidium's intellectual property breached the implied covenant of good faith and fair dealing;

G.    An order preliminarily, and a judgment permanently, enjoining and restraining BMJ, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with BMJ, from

a.    infringing or inducing the infringement of any claim of the '674 patent;

COMPLAINT FOR PATENT INFRINGEMENT                    32                    CASE NO.: _____

b.    infringing, inducing, or contributing to the infringement of any claim of the '882 patent; and

c.    infringing, inducing, or contributing to the infringement of any claim of the '883 patent.

H.    An order preliminarily, and a judgment permanently, enjoining and restraining BMJ, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with BMJ, from using and disclosing Evidium's trade secrets and to return all of same;

I.    An order preliminarily, and a judgment permanently, enjoining and restraining BMJ, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with BMJ, from any further breaches of the Technology Agreement;

J.    A judgment requiring that BMJ specifically perform all of its obligations under the Technology Agreement;

K.    A judgment requiring that BMJ pay Evidium all its damages caused by BMJ's unlawful acts, including under 35 U.S.C. § 284, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing acts;

L.    A judgment that this case is exceptional under 35 U.S.C. § 285 and other applicable laws;

M.    A judgment awarding Evidium its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285;

N.    A judgment that BMJ's infringement has been willful, that its trade secret misappropriation has been willful and malicious, and ordering BMJ to pay enhanced and exemplary damages as provided by law; and

O.    Such other relief as the Court deems just and appropriate.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Dated:    May 28, 2026                FENWICK & WEST LLP


By: /s/ Michael J. Macksteder
    Michael J. Sacksteder
    David L. Hayes
    Jessica L. Benzler
    Payam Ahmadi

    Attorneys for Plaintiff EVIDIUM, INC.